IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE AT MEMPHIS

| | | |
|---|---|---|
| PAUL RAYMOND BOETTCHER and JOYCE DIANE BOETTCHER, Husband and Wife, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 2:14-cv-02796-JPM-dkv |
| HOUSTYN NICOLE LOOSIER and JAMES LOOSIER, | ) ) ) | |
| Defendants. | ) | |

**ORDER GRANTING SHELTER MUTUAL INSURANCE COMPANY'S MOTION FOR PRETRIAL/STATUS CONFERENCE**
**AND**
**ORDER GRANTING SHELTER MUTUAL INSURANCE COMPANY'S MOTION TO INTERVENE**

Before the Court is Shelter Mutual Insurance Company's ("Shelter") Motion to Intervene, filed April 8, 2016. (ECF No. 74.) Also before the Court is Shelter Mutual Insurance Company's Motion for Pretrial/Status Conference, filed March 29, 2016. (ECF No. 69.)

For the following reasons, Shelter's Motion to Intervene and Motion for Pretrial/Status Conference are GRANTED.

**I. BACKGROUND**

This case concerns a motor vehicle accident that allegedly occurred on October 21, 2013, at 7:35 a.m. at S. Third Street and Horn Lake Road in Shelby County, Tennessee. (Compl. ¶ 1,

ECF No. 1.) Plaintiffs allege that Defendant Houstyn Nicole Loosier crashed a 2006 Ford F150, owned by Defendant James Loosier, into a third party's vehicle, which in turn was pushed into the rear of a 2007 Ford Focus driven by Plaintiff Paul Raymond Boettcher. (Id. ¶ 3.) Plaintiffs resolved their claims with Houstyn Nicole Loosier and James Loosier ("the Loosier Defendants"), and all claims against the Loosier Defendants were dismissed. (See ECF Nos. 39, 40.) Plaintiffs' only remaining claims involve their own underinsured motorist ("UIM") carrier, Shelter Mutual Insurance Company. (See Compl. ¶ 6.)

Plaintiffs filed a Complaint against the Loosier Defendants on October 17, 2014, and thereby gave notice of the filing of the suit to Shelter under section 56-7-1206(a) of the Tennessee Code and section 40-284(d) of the Kansas Statutes. (See Compl. ¶ 6.) The Loosier Defendants filed an Answer on November 17, 2014. (ECF No. 9.) Shelter filed an Answer on December 15, 2014. (ECF No. 12.)

On August 28, 2015, Shelter filed a Motion to Sever, seeking to try the insurance issues separately from the tort issues in this case. (ECF No. 37.) On October 9, 2015, Plaintiffs and the Loosier Defendants filed a Joint Motion for Dismissal with Prejudice. (ECF No. 39.) On the same day, the Court granted the Joint Motion for Dismissal (ECF No. 40) and denied as moot Shelter's Motion to Sever (ECF No. 41).

On October 21, 2015, Shelter moved for an independent medical exam. (ECF No. 42.) After a hearing, Magistrate Judge Vescovo denied as moot the motion without prejudice. (ECF Nos. 45, 46.) On February 9, 2016, Shelter filed a Motion for Permission to Identify Dr. Riley Jones for Purposes of an Independent Medical Examination of Plaintiff Joyce Boettcher and Permission to Take Dr. Jones' Evidentiary Deposition Prior to Trial. (ECF No. 51.) Magistrate Judge Vescovo granted the motion on March 29, 2016. (ECF No. 70.)

On February 9, 2016, Shelter also filed a Motion in Limine to Exclude Gross Medical Billings. (ECF No. 52.) On March 25, 2016, Plaintiffs responded in opposition. (ECF No. 66.) Plaintiffs filed a Notice of Supplemental Authority on April 13, 2016. (ECF No. 76.) This motion is still pending before the Court.

On March 1, 2016, Plaintiffs filed a Motion to Dismiss Without Prejudice, seeking dismissal of this action under Rule 41(a)(2) of the Federal Rules of Civil Procedure so that they may re-file the case against Shelter in Kansas. (ECF No. 55.) Shelter responded in opposition on March 7, 2016. (ECF No. 56.) On March 17, 2016, the Court held a telephonic hearing on the motion, during which Plaintiffs challenged the Court's subject matter jurisdiction. (Min. Entry, ECF No. 58.) The Court ordered supplemental briefing on the jurisdictional issue. (ECF

No. 59.)  Plaintiffs filed their supplemental Memorandum Brief in Support of Plaintiffs' Motion to Dismiss on March 18, 2016. (ECF No. 60.)  Shelter filed its Supplemental Response in Opposition to Plaintiffs' Motion to Dismiss on March 21, 2016. (ECF No. 61.)  The Court denied Plaintiffs' Motion to Dismiss on March 22, 2016.  (ECF No. 62.)

On March 25, 2016, Plaintiffs filed a Notice of Proof of Relevant Kansas Law, asserting that Kansas law governs the instant action.  (ECF No. 67.)  On March 29, 2016, Shelter filed a Motion for Pretrial/Status Conference, asserting that "under Kansas law, which controls in this case, Shelter is not currently a defendant in this lawsuit and the lawsuit is subject to dismissal on this basis."  (ECF No. 69 at 1.)  The Court held a telephonic status conference on April 5, 2016.  (Min. Entry, ECF No. 72.)[1]  At the status conference, Shelter expressed its desire to permissively intervene in the instant action so that it may proceed before the Court.  Plaintiffs maintained that this action should be dismissed and argued that intervention is not appropriate.

On April 8, 2016, Shelter filed the instant Motion to Intervene, arguing that it has a right to intervene under Rule 24(a)(2) and that it should be permitted to do so to correct any

---

[1] In holding the status conference, the Court granted the relief sought in Shelter's Motion for Pretrial/Status Conference.  Shelter's Motion for Pretrial/Status Conference is, therefore, GRANTED.

4

procedural discrepancy. (ECF No. 74.) Plaintiffs did not file a response.

## II. LEGAL STANDARD

Pursuant to Rule 24(a)(2), a third party may intervene as of right when it:

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede [its] ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). A party seeking to intervene as of right must establish four elements: "(1) timeliness of the application to intervene, (2) the applicant's substantial legal interest in the case, (3) impairment of the applicant's ability to protect that interest in the absence of intervention, and (4) inadequate representation of that interest by parties already before the court." Mich. State AFL-CIO v. Miller, 103 F.3d 1240, 1245 (6th Cir. 1997).

In determining whether a motion to intervene is timely, a court must consider all relevant circumstances, including:

> (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention.

Stupak-Thrall v. Glickman, 226 F.3d 467, 473 (6th Cir 2000) (quoting Jansen v. City of Cincinnati, 904 F.2d 336, 340 (6th Cir. 1990)).

**III. ANALYSIS**

In the Complaint, Plaintiffs aver that they "hereby give notice of the filing of this suit upon their UIM Carrier [Shelter Mutual Insurance Company] under T.C.A. § 56-7-1206(a), and under K.S.A. § 40-284(d)." (Compl. ¶ 6, ECF No. 1.) Throughout the case, Plaintiffs and Shelter have consistently referenced Tennessee law, which permits a UIM carrier to "file pleadings and take other action allowable by law in the name of the owner and operator of the uninsured motor vehicle or in its own name," without formal intervention. Tenn. Code Ann. § 56-7-1206(a). Following Plaintiffs' Notice of Proof of Relevant Kansas Law, however, Shelter filed a Motion for Pretrial/Status Conference and agreed that Kansas law controls the insurance issues in the instant matter. (ECF No. 69.)

Under Kansas law, the UIM carrier has the option to intervene in the liability action. Loucks v. Farm Bureau Mut. Ins. Co., 101 P.3d 1271, 1276-77 (Kan. Ct. App. 2004). If the insurer elects to intervene, it is named as a party to the action and "gains a voice in the outcome of the case." Id. If the insurer elects not to intervene, the trier of fact will not

6

hear evidence of liability insurance coverage, but the insurer is nonetheless bound by any judgment in the liability action. Id.

Although Plaintiffs have resolved their claims against the Loosier Defendants, the Court, having heard argument only referring to Tennessee law, did not enter a final judgment in this action. Now that the parties agree that Kansas law controls the insurance issues, the Court must determine whether the action may proceed. First, the Court considers whether a Motion to Intervene by a UIM carrier, filed after the claims against the tortfeasor have been resolved but before the entry of judgment, is timely. Second, the Court considers whether Shelter may intervene as a matter of right pursuant to Rule 24(a)(2). Third, the Court addresses the effect of intervention on the Court's subject matter jurisdiction.

**A.   Timeliness of Motion to Intervene**

As an initial matter, a motion to intervene is not per se untimely merely because it is filed after the claims between the original parties have been resolved. In Penick v. Columbus Education Association, 574 F.2d 889 (6th Cir. 1978) (per curiam), the Columbus Education Association ("CEA") "sought to intervene after the District Court had determined that the Columbus and Ohio State Boards of Education should be held liable for unconstitutional segregation of the Columbus public

7

schools, but before a desegregation plan had been submitted and approved by the court." Penick, 574 F.2d at 890. The United States District Court for the Southern District of Ohio denied intervention as untimely. Id. at 890-91. Although the Sixth Circuit found that the district court did not abuse its discretion in denying the CEA's motion to intervene, the Sixth Circuit specifically noted that the "decision [was] reached without prejudice to the right of the CEA to seek intervention at a later date should it become apparent that CEA interests are not being adequately represented in further proceedings before the District Court." Id. at 891. Thus, the Sixth Circuit allowed for the possibility of intervention at an even later date. See id.; see also Flynt v. Lombardi, 782 F.3d 963, 967 (8th Cir. 2015) (per curiam) (permitting a third-party to intervene post-judgment to challenge the sealing of judicial records); Smuck v. Hobson, 408 F.2d 175, 181-82 (D.C. Cir. 1969) (permitting post-judgment intervention where intervenor-appellants were inadequately represented in the decision not to appeal and noting that "the leading cases in which intervention has been permitted following a judgment tend to involve unique situations").

Considering the five factors set forth by the Sixth Circuit, and focusing on the unique posture of this case, the Court finds that Shelter's Motion to Intervene is timely.

### 1. Point to Which the Suit Has Progressed

This case was filed in October 2014, approximately eighteen months before Shelter filed the instant motion to intervene. During this time, the parties have engaged in discovery, Plaintiffs have resolved all claims against the Loosier Defendants, and the parties have begun filing motions in limine in anticipation of trial. (See, e.g., ECF Nos. 23, 40, 52.) Ordinarily, this factor would weigh against intervention. This case, however, presents a unique situation. Often, the intervention of a third party late in proceedings would disrupt the schedule or delay the conclusion of the case. See, e.g., Johnson v. City of Memphis, 73 F. App'x 123, 132 (6th Cir. 2003) (finding the first factor weighed against timeliness because "extensive litigation activity" had already taken place); Shy v. Navistar Int'l Corp., 291 F.R.D. 128, 133 (S.D. Ohio 2013) ("[A]n examination of the timing of the intervenor's motion in light of 'the point to which the suit has progressed' is most relevant when the motion arrives at a point in time that would require reopening discovery, delaying trial, or some other prejudicial delay to the parties."). Because of the misapplication of Tennessee law, Shelter has participated in all proceedings thus far, as if it were a party. Permitting Shelter to intervene would not delay the resolution of this matter, but would, in fact, allow the case to proceed to trial and to

conclude in a timely manner. As a result, this factor is not pertinent to the analysis in this particular case, and the Court places minimal weight on this factor. See Stupak-Thrall, 226 F.3d at 475 ("The absolute measure of time between the filing of the complaint and the motion to intervene is one of the least important [considerations]. A more critical factor is what steps occurred along the litigation continuum during this period of time." (citation omitted)).

### 2. Purpose of Intervention

"District courts should evaluate the purpose of intervention in terms of the 'importance of the legal interests asserted.'" Davis v. Lifetime Capital, Inc., 560 F. App'x 477, 491 (6th Cir. 2014) (quoting Clarke v. Baptist Mem'l Healthcare Corp., 427 F. App'x 431, 436 (6th Cir. 2011)). "If a third party seeks merely an opportunity to present an argument or expertise, participation as an amicus curiae may adequately protect its interests." Id. (citing Stupak-Thrall, 226 F.3d at 475).

Shelter seeks to intervene "to protect its interests in this action" and "to correct any procedural discrepancy before proceeding to trial." (ECF No. 74-1 at 3-4.) Shelter has spent considerable time and resources preparing this case for trial, under the misunderstanding that it did not need to formally intervene. Now that the parties agree that Kansas law governs

the insurance issues, Shelter seeks to intervene to avoid dismissal pursuant to Kansas law and re-litigation of this action from inception in Kansas.

Shelter also notes that Kansas law provides that if a UIM carrier chooses not to intervene in a lawsuit between its insured and an underinsured motorist, the UIM carrier is bound by the judgment received in the lawsuit against the underinsured motorist. (Id. at 3 (citing Loucks, 101 P.3d at 1276-77).) As a result, any judgment in this case will have preclusive effect and limit Shelter's legal rights.

Thus, Shelter seeks intervention for two compelling reasons: (1) to avoid duplicative litigation and preserve resources, and (2) to participate in an action by which it will be bound. This factor, therefore, weighs in favor of timeliness.

### 3. Length of Time Preceding Intervention During Which the Proposed Intervenor Knew or Should Have Known of Its Interest in the Case

Plaintiffs' Complaint, filed October 17, 2014, provided that "Plaintiffs hereby give notice of the filing of this suit upon their UIM carrier [Shelter Mutual Insurance Company] under T.C.A. § 56-7-1206(a), and under K.S.A. § 40-284(d)." (Compl. ¶ 6, ECF No. 1 (emphasis added).) Shelter filed an Answer on December 15, 2014. (Answer, ECF No. 12.) Although Shelter denied in its Answer that UIM coverage was applicable in this

11

case (id. at 1), Shelter knew that it had a possible interest in the case no later than December 2014, approximately fourteen months before filing a motion to intervene.  Shelter also knew or should have known that its UIM policy with Plaintiffs was entered into under Kansas law based on the insurance contract as well as the Complaint.  This factor, therefore, weighs against a finding of timeliness.

Plaintiffs, however, did not file a Notice of Proof of Relevant Kansas Law until March 25, 2016.  (ECF No. 67.)  Only four days later, on March 29, 2016, Shelter filed a Motion for Pretrial/Status Conference to discuss the conflict of law issues.  (ECF No. 69.)  Immediately following a status conference, Shelter filed the instant Motion to Intervene on April 8, 2016.  (ECF No. 74.)  Thus, although Shelter should have considered that Kansas law applied to the insurance issues in December 2014, it notified the Court and sought to intervene very soon after it realized intervention was appropriate.

The Court also recognizes that Plaintiffs, too, proceeded under the assumption that Tennessee law applied to all issues in this case and that formal intervention was not necessary. Permitting Plaintiffs to benefit from this mistake would contravene principles of equity.  See Jackson v. Richards Med. Co., 961 F.2d 575, 587 n.11 (6th Cir. 1992) (recognizing that, in the employment discrimination context, courts have

consistently applied equitable principles to prevent one party from being penalized for the other's mistakes). Accordingly, the Court gives minimal weight to this factor.

> **4. Prejudice to the Original Parties Due to the Proposed Intervenor's Failure to Promptly Intervene After It Knew or Reasonably Should Have Known of Its Interest in the Case**

"One of the core purposes of the timeliness requirement is to prevent disruptive, late-stage intervention that could have been avoided by the exercise of reasonable diligence." P.R. Tel. Co. v. San Juan Cable, LLC, 298 F.R.D. 28, 35 (D.P.R. 2014). "The only prejudice relevant to the timeliness determination is incremental prejudice from a would-be intervenor's delay in intervening, not prejudice from the intervention in and of itself." Davis, 560 F. App'x at 493.

The Court finds that Plaintiffs will suffer no prejudice as a result of Shelter's intervention. Throughout this litigation, Plaintiffs have proceeded as if Shelter were a proper participant in this matter. Plaintiffs and Shelter have exchanged disclosures, engaged in discovery, and participated in hearings together for the last eighteen months. Although Plaintiffs cited to Kansas law in the Complaint (see Compl. ¶ 6), Plaintiffs referred exclusively to Tennessee law in their legal memoranda until they filed the Notice of Proof of Relevant Kansas Law (ECF No. 67) on March 25, 2016. Plaintiffs object to

13

the intervention on the grounds that they would prefer to dismiss this case and re-file in Kansas, but the inconvenience of litigating in Tennessee stems from Plaintiffs' choice of venue rather than Shelter's delay in seeking intervention. Permitting Shelter to intervene at this late stage will result in no prejudice to Plaintiffs; it will merely formalize Shelter's ongoing participation in this action.

### 5. Unusual Circumstances Militating For or Against Intervention

The parties' confusion regarding the application of Tennessee or Kansas law places this case in a unique posture. Based on the assumption that Tennessee law applied, Shelter participated in this matter since inception without intervening in the action. Under Kansas law, such participation by a UIM carrier would have been inappropriate absent a formal motion to intervene. Shelter seeks to correct its defect by intervening at this late stage in the proceedings, only three months before trial. Plaintiffs oppose intervention because they wish to dismiss the instant case and file an action against Shelter in a more convenient forum. At this point, the parties have spent considerable time and resources litigating this case. Initiating a new action in Kansas would result in duplicative litigation and delay resolution of the issues presented in this case. Accordingly, the Court finds that the unusual

14

circumstances of this case strongly militate in favor of intervention.

Considering these factors, and placing particular weight on the fourth and fifth factors, the Court finds that Shelter's Motion to Intervene is timely.

**B.   Right to Intervene Under Rule 24(a)(2)**

Shelter argues that it may intervene as "of right" under Rule 24(a)(2) of the Federal Rules of Civil Procedure. As discussed above, a party seeking to intervene under Rule 24(a)(2) must establish: "(1) timeliness of the application to intervene, (2) the applicant's substantial legal interest in the case, (3) impairment of the applicant's ability to protect that interest in the absence of intervention, and (4) inadequate representation of that interest by parties already before the court."  Miller, 103 F.3d at 1245.

The Court finds Shelter's motion timely, see supra Part III.A.  Additionally, it is undisputed that Shelter has a legal interest in this action as Plaintiffs' UIM carrier.  It is further undisputed that neither Plaintiffs nor the Loosier Defendants adequately represent Shelter's position.

Moreover, Shelter has demonstrated that its interests would be impaired in the absence of intervention.  The burden of establishing this element is minimal.  Miller, 103 F.3d at 1247. Under Kansas law, Shelter is "bound by any judgment" in this

15

action, regardless of whether it intervenes. Loucks, 101 P.3d at 1277. As a result, a judgment in the instant case would have res judicata effect and limit Shelter's legal rights. For this reason, Kansas grants insurers the right to intervene in actions by their insureds against underinsured motorists. Haas v. Freeman, 693 P.2d 1199, 1204 (Kan. 1985).

Before 1966, the Federal Rules of Civil Procedure required a party seeking to intervene as of right to demonstrate that he would be bound in a res judicata sense by any judgment in the case. See Sam Fox Publ'g. Co. v. United States, 366 U.S. 683, 685 n.2 (1961). The 1966 amendments "relaxed the degree to which a party must be affected by disposition of the 'action.'" Babcock & Wilcox Co. v. Parsons Corp., 430 F.2d 531, 541 (8th Cir. 1970); see also Spring Constr. Co. v. Harris, 614 F.2d 374, 377 (4th Cir. 1980). Thus, although Shelter is not required to show that it will be bound by any judgment in the instant case, such a showing is sufficient to satisfy the "relaxed" Rule 24(a)(2) requirements.

Accordingly, the Court finds that Shelter may intervene as of right pursuant to Rule 24(a)(2).

**C.  Effect of Intervention on Subject Matter Jurisdiction**

Permitting Shelter to intervene does not affect the Court's subject matter jurisdiction. Under Lee-Lipstreu v. Chubb Group of Insurance Cos., 329 F.3d 898, 899-900 (6th Cir. 2003), the

16

direct action provision of 28 U.S.C. § 1332(c)(1)[2] does not apply in a dispute between an insured and his own insurance company, regardless of whether the insurer intervenes. See also Ljuljdjuraj v. State Farm Mut. Auto. Ins. Co., 774 F.3d 908, 910-12 (6th Cir. 2014).

**IV. CONCLUSION**

For the foregoing reasons, Shelter's Motion to Intervene is GRANTED. Shelter having already appeared as a Defendant in this action, no further action is necessary to formalize Shelter's intervention on the docket.

IT IS SO ORDERED, this the 4th day of May, 2016.

/s/ Jon Phipps McCalla
JON PHIPPS McCALLA
UNITED STATES DISTRICT JUDGE

---

[2] Pursuant to 28 U.S.C. § 1332(c)(1), "in any direct action against the insurer of a policy or contract of liability insurance," such insurer is considered to be a resident of, inter alia, the state of which the insured is a citizen.

> Applying the direct action provision to a dispute solely between an insured and [his or] her own insurance company would result in an absurdity—federal courts would never hear common insurance disputes because the insured and the insurer, the plaintiff and the defendant, would always be considered citizens of the same state.

Lee-Lipstreu, 329 F.3d at 899-900.